JENNER & BLOCK LLP
Rick Richmond (Cal. Bar No. 194962)
rrichmond@jenner.com
Nick G. Saros (Cal. Bar No. 209922)
nsaros@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Telephone:   (213) 239-5100
Facsimile:   (213) 239-5199

Attorneys for Plaintiff Lutron Electronics Co., Inc.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUTRON ELECTRONICS CO., INC. a Pennsylvania Corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>PASS & SEYMOUR, INC.; AH LIGHTING; BIG DEAL ELECTRIC CORP.; AMERICAN TOP ELECTRIC CORP.; WESTGATE MANUFACTURING CO.; ELEMENTAL LED, LLC and DIODE LED,<br><br>          Defendants. | Case No. SAC-11-748-JST(MLG)<br><br>**LUTRON'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO EXTEND STAY PENDING REEXAMINATION BY THE U.S. PATENT OFFICE**<br><br>The Hon. Josephine Staton Tucker<br><br>Date:           March 26, 2012<br>Time:          10:00 a.m.<br>Courtroom:  10A |
| PASS & SEYMOUR, INC.,<br><br>          Counter-claimant,<br><br>     v.<br><br>LUTRON ELECTRONICS CO., INC., a Pennsylvania Corporation,<br><br>          Counter-defendant. | |

# TABLE OF CONTENTS

I.  INTRODUCTION……..............................................................................................1

II. BACKGROUND……..............................................................................................1

    A.  Lutron's Enforcement of Its U.S. Patent No. 5,637,930........................1

    B.  The Pending '930 Reexamination .........................................................3

III. ARGUMENT……...................................................................................................4

    A.  Staying This Action Until Completion of the Prolonged Reexamination Process is Unfairly Prejudicial to Lutron.....................5

    B.  A Stay Will Not Simplify the Issues in This Case ................................9

    C.  The Other Alleged Benefits of a Stay Proposed By Defendant Are Speculative and Do Not Justify a Stay .................................................11

IV. CONCLUSION……..............................................................................................12

LUTRON'S MEMORANDUM IN OPPOSITON TO DEFENDANT'S MOTION TO EXTEND STAY

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*ADA Solutions, Inc. v. Engineered Plastics, Inc.*,
  2011 U.S. Dist. LEXIS 116590 (D. Mass. Oct. 7, 2011) ................................. 5, 8

*Agar Corp. v. Multi-Fluid Inc.*,
  983 F. Supp. 1126 (S.D. Tex. 1997) .................................................................. 4, 9

*Allergan Inc. v. Cayman Chemical Co.*,
  No. SACV 07-01316-JVS (C.D. Cal. April 9, 2009) ...................................... 7, 12

*Biomet Biologics, LLC v. Bio Rich Med., Inc.*,
  2011 U.S. Dist. LEXIS 109282 (C.D. Cal. Sep. 26, 2011) .................... 5, 6, 7, 11

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
  2007 U.S. Dist. LEXIS 44107 (N.D. Cal. Jun. 6, 2007) ....................................... 4

*NIDEC Corp. v. LG Innotek Co., Ltd.*,
  2009 U.S. Dist. LEXIS 46123 (E.D. Tex. Apr. 3, 2009) ...................................... 6

*Rosenthal Mfg. Co. v. Thermal Equip., Inc.*,
  1988 U.S. Dist. LEXIS 12241 (D. Kan. Oct. 12, 1988) ....................................... 9

*Sunbeam Prods. v. Hamilton Beach Brands, Inc.*,
  2010 U.S. Dist. LEXIS 45654 (E.D. Va. May 7, 2010) ....................................... 5

*Viskase Corp. v. Am. Nat'l Can Co.*,
  261 F.3d 1316 (Fed. Cir. 2001) ............................................................................ 4

**STATUTES**

28 U.S.C. § 1659 .......................................................................................................... 4

35 U.S.C. § 102 ............................................................................................................ 4

35 U.S.C. § 103 ............................................................................................................ 3

## I. INTRODUCTION

Lutron filed this case and the corresponding complaint in the ITC to stop Pass & Seymour's infringement of Lutron's U.S. Patent No. 5,637,930. Rather than allowing either this Court or the ITC to settle the parties' dispute, Pass & Seymour ("P&S") has taken every step possible to prevent the merits of this case from being presented to a fact-finder. Instead of advancing its arguments in the ITC, P&S took the extraordinary step of changing its product assembly location from China to the United States. It did so to avoid the ITC action, which only concerns product importation. Around the same time, P&S filed for reexamination of the '930 patent, even though the '930 patent has already been the subject of *two previous reexamination requests*. Now P&S seeks to stay this case, possibly for years, and certainly through the expiration of the '930 patent, so that it can avoid injunctive relief and maintain selling its blatant copy of Lutron's successful Diva® switch.

A further stay of a decision on the merits is unwarranted. P&S's motion for stay should be denied because: (1) a stay will cause Lutron prejudice and give P&S an unfair tactical advantage; (2) the reexamination is not likely to simplify the issues in this case; and (3) the other alleged benefits identified by P&S are merely speculative.

## II. BACKGROUND

### A. **Lutron's Enforcement of Its U.S. Patent No. 5,637,930**

Lutron's '930 patent issued in 1997 and has since been reexamined and affirmed in the United States Patent & Trademark Office (PTO). The latest reexamination request from P&S is the third such request—the first two in 2003 and 2004. The PTO merged the two earlier requests, and the '930 patent claims underwent reexamination for 41 months. After considering the prior art (much of which is the same as that relied on by P&S), the PTO allowed 132 claims.

One Lutron product embodying the '930 patent is Lutron's Diva® switch. Lutron's product has been successful in the marketplace as evidenced by the numerous copycat products offered by several competitors, including P&S. To try to stop the importation

and sale of those products, Lutron brought this case against several defendants, including P&S. Because many of the infringing products were manufactured abroad and imported into the U.S., Lutron brought a corresponding action in the ITC against the same defendants as well as three Chinese manufacturers making knock-off products. In the ITC, all of the defendants have either consented, defaulted, or failed to respond. In this district court action, all parties except P&S have either consented to infringement and a permanent injunction (AH Lighting, Westgate, Elemental LED and Diode LED), or have failed to respond in any fashion (Big Deal and American Top).

Throughout the life of the '930 patent, Lutron has diligently enforced its patent rights. Lutron has previously asserted the '930 patent against a number of competitors seeking to stop their infringing importation and sales. In 2003, Lutron asserted the '930 patent in federal district court against Cooper Industries. In 2007, Lutron asserted the '930 patent in federal district court against Leviton Manufacturing Company. In 2009, Lutron asserted the '930 patent in the ITC against Universal Smart Electric Corp. And also in 2009, Lutron asserted the '930 patent in the ITC against Neptune Light, Inc. Lutron takes its patent rights seriously and has been persistent in taking necessary action to stop infringement of the '930 patent. In this case, P&S is the only remaining defendant. Lutron seeks an injunction against P&S's from selling its Harmony® dimmer switch that infringes the '930 patent.

//
//
//
//
//
//
//
//
//

1   P&S's Harmony® product is nearly identical to the patented Lutron product:



**Pass & Seymour Harmony®**  **Lutron Diva®**

These products directly compete for sales through electric supply distributors and retail outlets such as Lowe's and Home Depot.

### B. The Pending '930 Reexamination

P&S filed its reexamination request on August 10, 2011. The PTO recently issued its first office action on February 10, 2012, rejecting the '930 claims. The PTO relied on three primary prior art references, each in combination with one or more other prior art references to form an obviousness rejection under 35 U.S.C. §103. (P&S Katherine Lutton Decl., Ex. 2). Those three references are GB 2128822 to Spencer, FR 2116669 to Arnould, and US 4,880,950 to Carson. The Spencer and Arnould references were already considered by the PTO during the previous reexamination, and the PTO still issued 132 claims. (*See* P&S Katherine Lutton Decl., Ex. 4 (Foreign Patent Documents)). The remaining reference, the Carson patent, is not prior art to the '930 patent because the '930

date of invention precedes the effective date of the Carson patent. Accordingly, the rejections based on Carson should be withdrawn.

The PTO does not allege anticipation under 35 U.S.C. §102, which would require a single prior art reference to disclose each and every claim limitation. Instead, the PTO rejections require a combination of prior art references to allege obviousness. In addition, the examiner may consider secondary factors of nonobviousness with respect to an obvious rejection, such as commercial success and copying. Thus, even if the difficult task of showing obviousness were possible, the commercial success of Lutron's product and competitors' copying of that product may overcome that rejection.

This case is currently stayed under 28 U.S.C. §1659. Because the requirements of that statute are no longer met, Lutron moved to lift the stay. (Dkt. 53). In response to that motion, P&S agreed that the section 1659 stay is no longer appropriate. (Dkt. 57, p. 2). P&S's instant motion requests that the stay continue based on the reexamination. Lutron addresses the merits of that argument below.

### III. ARGUMENT

The decision whether to stay a case based on a pending reexamination is entirely within the Court's discretion. *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001). No court is obligated to stay a case due to a pending reexamination, regardless of the relevance of issues in the PTO to the district court. *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2007 U.S. Dist. LEXIS 44107, at *10-11 (N.D. Cal. Jun. 6, 2007), reversed in part on other grounds, 582 F.3d 1288 (9th Cir. 2009). If a stay will "more likely than not delay the district court proceedings without any countervailing benefit, the court should proceed with the merits of the case without the benefit of the Patent Office reexamination." *Agar Corp. v. Multi-Fluid Inc.*, 983 F. Supp. 1126, 1127 (S.D. Tex. 1997).

The three factors for the Court to consider are (1) whether a stay will simplify the issues in question; (2) the current stage of the litigation; and (3) whether a stay will unduly prejudice the patentee or present a clear tactical disadvantage for the nonmoving

party. *Biomet Biologics, LLC v. Bio Rich Med., Inc.*, 2011 U.S. Dist. LEXIS 109282, at *4-5 (C.D. Cal. Sep. 26, 2011) . These factors do not carry equal weight. For instance, while this case is admittedly in its early stages, that factor does not outweigh the prejudice Lutron will suffer by a prolonged stay, or that the stay will not simplify the issues in this case. Courts have noted that the current status of the litigation "does not compel a stay but rather is one measure of whether it is prudent to stay the litigation or not." *ADA Solutions, Inc. v. Engineered Plastics, Inc.*, 2011 U.S. Dist. LEXIS 116590, at *9 (D. Mass. Oct. 7, 2011); *Sunbeam Prods. v. Hamilton Beach Brands, Inc.*, 2010 U.S. Dist. LEXIS 45654, at *4 (E.D. Va. May 7, 2010) ("the [ ] inference—that a suit in the early stages should weigh heavily in favor of a stay—is not true") (citation omitted). As discussed below, numerous cases denied the stay request despite being in the early stage of litigation because that factor was outweighed by the prejudice to the patentee and the minimal likelihood of simplifying the issues. The same is true here.

### A. Staying This Action Until Completion of the Prolonged Reexamination Process is Unfairly Prejudicial to Lutron.

Because a further stay of this action will unfairly prejudice Lutron and its ability to enforce its patent rights, the stay request should be denied. Courts have indicated that whether the stay will unduly prejudice or present a tactical disadvantage to the patentee is the most important factor to consider. *ADA Solutions*, 2011 U.S. Dist. LEXIS 116590, at *4. Accordingly, it is the moving party's burden to show that the patentee will not suffer prejudice from the proposed stay. *Id.* P&S has not met that burden.

The prejudice that Lutron will suffer from the stay is demonstrated by several factors, including:

(i) Lutron's ability to seek injunctive relief for the infringement will likely be eliminated if the stay is granted because the '930 patent expires in just over two years;

(ii) the stay creates an unfair tactical disadvantage for Lutron; and

(iii) marketplace confusion is likely, especially due to P&S's misleading press release regarding this matter.

*First*, Lutron will be prejudiced if forced to wait for the PTO to complete its reexamination of the '930 patent before it can seek a resolution of this matter and the injunctive relief it requests. It is undisputed that reexamination proceedings can be quite lengthy. *See NIDEC Corp. v. LG Innotek Co., Ltd.*, No. 6:07cv108, 2009 U.S. Dist. LEXIS 46123, at *9-10 (E.D. Tex. Apr. 3, 2009) (stating that ex parte reexamination is generally "a lengthy process," and "could take years"). Indeed, the average length of an ex parte reexamination is 25.6 months. (P&S Katherine Lutton Decl., Ex. 3; Ex. A, Mojica Decl., ¶ 9)[1]. The length can increase dramatically if appeals to the Board of Patent Appeals and the Federal Circuit become necessary. *NIDEC Corp.*, 2009 U.S. Dist. LEXIS 46123, at *9 (stating that it could take an additional 24 months to get through the appellate process for reviewing a reexamination); Ex. A, Mojica Decl., ¶ ¶ 8, 16).

The '930 patent expires in June, 2014. If P&S's stay motion is granted, the prospect of Lutron enjoining sales of the P&S product will become impossible. The time required for the PTO to complete the reexamination, and then re-start and complete this litigation, will surely exceed the 27 months remaining in the life of the '930 patent.

This district has recently relied on a similar set of facts to justify denying a stay request. In *Biomet Biologics, LLC v. Bio Rich Medical, Inc.*, Judge David O. Carter denied the stay request (in part) because of the concern over the limited remaining life of the patent-in-suit:

> Placing the [patent-in-suit] in limbo for the majority of its remaining life would create a ***clear tactical disadvantage*** for Plaintiffs. Thus, the prejudice factor weighs strongly against granting Defendants' Motion to Stay.

*Biomet*, 2011 U.S. Dist. LEXIS 109282, at *7 (denying stay motion) (emphasis added).

---

[1] Exhibits A, B, and C referenced herein refer to the Declaration of Nick G. Saros in Support of Lutron's Memorandum in Opposition to Defendant's Motion to Extend the Stay Pending Reexamination by the U.S. Patent Office, filed concurrently herewith.

Lutron's situation is comparable to *Biomet Biologics*. A stay will likely drain the remaining life of Lutron's '930 patent. While P&S alleges that the facts of this case are "indistinguishable" from Your Honor's ruling in the *Symantec* case (Dkt. 55, P&S Br. at 1), which is a vast overstatement, this case is far more aligned with the facts presented in Judge's Carter's ruling in *Biomet Biologics* denying the stay request.[2]

*Second*, because Lutron and P&S are competitors, granting a further delay to a decision on the merits allows P&S a clear tactical advantage. P&S carries no burden during the reexamination, and may continue to sell the infringing product and cause damage to Lutron for the duration of the reexamination and the subsequent litigation. This district has previously determined this to be an "unwarranted tactical advantage." (Ex. B, *Allergan Inc. v. Cayman Chemical Co.*, No. SACV 07-01316-JVS, Dkt. 288 (C.D. Cal. April 9, 2009) (stating that "granting a stay might well give [defendant] an unwarranted tactical advantage simply by buying it as much time as the reexamination process requires.")).

In *Biomet Biologics*, Judge Carter similarly relied on the fact that the parties are direct competitors as an important reason to deny the stay motion:

> Here, because Defendants allegedly continue to infringe upon Plaintiffs' patent in direct competition with Plaintiff, a delay has the potential to cause severe prejudice.

*Biomet Biologics,* 2011 U.S. Dist. LEXIS 109282, at *6; *see also* Ex. B, *Allergan, Inc.*, Dkt. 288 at 3 (finding prejudice sufficient to warrant denial when a stay would impede the

---

[2] In the *Symantec Corp. v. M86 Security, Inc.* case relied upon by P&S, the facts differ greatly from those here. They are far from "indistinguishable." *Symantec* concerned three patent reexaminations, one of which was an *inter partes* proceeding, which means that any invalidity determination is binding on the defendant and would finally resolve that issue regardless of the PTO decision on validity. Here, any result from P&S's *ex parte* reexamination request is not binding on P&S. When the claims issue from the reexamination, P&S is free to make the very same invalidity arguments it now makes to the PTO. Other differences from *Symantec* are that the product at issue had been in the marketplace for over 12 years, and the plaintiff did not actively defend its patent. Neither of those facts bear any resemblance to this case.

ability to pursue injunctive relief, which is critical when the parties are direct competitors). Also, other courts have determined that when the parties are direct competitors, the prejudice caused by the delay is heightened. *ADA* Solutions, 2011 U.S. Dist. LEXIS 116590, at *4-5.

*Lastly*, prejudice to Lutron is further shown by marketplace confusion surrounding this lawsuit, which in large part can be attributed to a misleading press release about this dispute. After P&S filed a formal consent motion in the ITC where it agreed to cease all importation, sale for importation, and sale after importation of the accused product until the '930 patent expires (or otherwise can no longer be asserted against P&S) (*see* Dkt. 53-2), P&S issued the following press release:

> A judge has made a ***final ruling*** in a patent infringement complaint filed by Lutron Electronics Co., Inc., against Pass & Seymour concerning its range of Harmony Dimmers. The case was originally filed against Pass & Seymour and others on May 16, 2011.
>
> On November 2, 2011, Administrative Law Judge Theodore R. Essex ***formally dismissed*** Pass & Seymour, Inc., as a respondent in Investigation No. 337-TA-776 that was pending at the United States International Trade Commission.
>
> Pat Davin, Vice President and General Manager at Legrand/Pass & Seymour said, "***We are happy with the outcome***. Pass & Seymour is a company that has built and maintained its reputation on innovation, good business ethics, customer centricity and collaboration with our wide range of partners. We are committed to protecting our own intellectual property while respecting the IP of others. Delivering industry leading products, like the Harmony Dimmer range will continue to be important for us.

(Ex. C) (emphasis added). P&S statements certainly imply to its dealers and customers that P&S won the case, that its products do not infringe Lutron's patent, and that P&S and its dealers remain free to continue to sell its Harmony product without consequences. Providing misleading information bolsters P&S's strategy to sit idle and continue to sell its infringing products while Lutron continues to be harmed.

B. **A Stay Will Not Simplify The Issues In This Case.**

The strong likelihood is that the pending reexamination will not simplify the issues in the case—surely not enough to justify the prejudice that will be caused to Lutron. This is true because:

(i) The pending reexamination is the third request related to the '930 patent. Despite previous challenges, the PTO affirmed the '930 patent's validity with 132 allowed claims;

(ii) Two primary prior art references relied upon by the PTO (Spencer and Arnould) were already considered in the previous reexamination, and the third (Carson) is not prior art to the '930 patent; and

(iii) This case contains additional issues beyond that at issue in the PTO proceedings, and for the one relevant issue (invalidity), P&S is not bound by the PTO's determination.

*To start*, P&S's reexamination request for the '930 patent is the ***third*** of its kind. After two other reexamination requests, the PTO issued a reexamination certificate allowing 132 claims. The previous combined reexamination lasted over 41 months.

P&S argues that "a more extensive prosecution history" may provide this Court with "valuable analysis" upon which to rely. That is not the case here. The patent has been extensively examined, compared to dozens of prior art references, and subject to multiple challenges. The prospect of further analysis by the PTO benefiting the Court is minimal and surely insufficient to justify a stay. Indeed, when the patent-in-suit has already been reexamined, courts agree that any benefit of further analysis from the PTO carries far less weight. *Agar*, 983 F. Supp. at 1127; *Rosenthal Mfg. Co. v. Thermal Equip., Inc.*, 1988 U.S. Dist. LEXIS 12241, at *3-4 (D. Kan. Oct. 12, 1988) (finding "less concern" in PTO proceeding because it is the second reexamination, and any technical evaluation from the PTO exists from the first reexamination). In *Agar*, the court determined that it already had the benefit of a technical evaluation from the patent office from a previous reexamination, which justified denying the stay. *Agar*, 983 F. Supp. at 1127. The same is true here.

*Second*, the prior art relied upon by P&S (and the USPTO) is largely the same as that already submitted in the prior reexamination. The PTO relied on three primary references as the basis for the initial rejection of the '930 claims. Of those references, Spencer and Arnould were already considered by the examiner in the previous reexamination, yet the PTO allowed 132 claims. The Carson reference was not previously considered, but it is not prior art. Carson is dated November 14, 1989, which is after the date of invention of the Lutron '930 patent. Accordingly, when Lutron responds to the PTO office action rejecting the claims, it will provide a declaration "swearing behind" the Carson reference. With two remaining primary references, both of which have been considered already by the PTO, the chances for cancellation (or even amendment) are minimal—especially for the 132 claims that were previously confirmed. Further, little should be made of an initial rejection in the PTO. It is routine for a patent examiner to initially reject claims. This rejection provides no real insight into the likely end result of the prosecution. (Ex. A, Mojica Decl., ¶ 11).

Furthermore, P&S relies on PTO statistics to alleged that amendment or cancellation is likely. (Dkt. 55, P&S Br. at 4). But those statistics are somewhat misleading and unreliable. The statistics do not account for the fact that this is **not** the first reexamination. The statistics would surely be different for subsequent reexamination of the same patent, but that data is not compiled by the PTO. (Ex. A, Mojica Decl., ¶ 10). Similarly, the statistics do not take into account that the rejections rely on prior art already cited to the PTO. In addition, the manner in which the PTO counts amendments is imprecise. For instance, if just one of the 132 claims were amended in this case, the PTO will count that as a reexamination resulting in amendment. And if all original claims were confirmed (an indisputable success for the patentee), but the patentee added just one additional claim, the PTO counts that as a reexamination resulting in amendment as well. (Ex. A, Mojica Decl., ¶ 10). Thus, while the statistics may provide some insight to the Court, the specific facts of this case are more instructive regarding the likely outcome of the '930 reexamination.

LUTRON'S MEMORANDUM IN OPPOSITON TO DEFENDANT'S MOTION TO EXTEND STAY

*Third*, this litigation concerns additional issues that will not be simplified through reexamination. For instance, the issues of infringement, damages, and injunctive relief will not be considered during reexamination; and therefore not simplified. P&S pled defenses of noninfringement, laches, estoppel, acquiescence, and waiver—none of which will be implicated by the reexamination.

Notably, P&S will not be bound by the PTO's determination. When the '930 claims are affirmed, the PTO's determination will not preclude P&S from advancing an invalidity defense on the very same references it presented to the PTO. P&S's brief touts the "PTO's expertise" as a benefit of staying this case. But it will be the first to question that expertise when challenging the patent's validity despite the PTO's stamp of approval in allowing the claims.

*Lastly*, even the potential to simplify issues in the case, which has been shown to be unlikely, does not justify a stay when that possibility does not outweigh the resulting prejudice to Lutron. *Biomet Biologics*, 2011 U.S. Dist. LEXIS 109282, at *8 (Judge David O. Carter) ("although the PTO's reexamination of the [patent] has the potential to simplify the issues at trial, that mere possibility is not sufficient to outweigh the likely prejudice against Plaintiffs if the stay was granted."). The same is true here.

### C. The Other Alleged Benefits of a Stay Proposed By Defendant Are Speculative and Do Not Justify a Stay.

P&S raises six alleged benefits from staying the litigation. (Dkt. 55, P&S Br. at 5). Besides dismissal of the lawsuit if the entire patent is invalidated, which is unlikely considering that there are 132 claims already allowed over the same prior art, the remaining five "benefits" are at best speculation. Nothing indicates that discovery regarding prior art will be alleviated (#1), that a stay of the litigation will encourage settlement (#3), that reexamination will reduce the complexity or length of litigation (#4), that reexamination will limit the issues, defenses, or evidence to be presented at trial (#5), or that costs will be reduced for both parties and the Court (#6). Indeed, P&S provides no support for these alleged benefits.

In contrast, this district has identified countervailing concerns weighing in favor of denying the stay request, such as: (1) allowing delay to dramatically lower the benefit of any injunctive relief; (2) wasting substantial expense and time invested in the issues under reexamination; (3) granting a tactical advantage to the moving party; (4) and risking an outcome that would not affect the district court litigation. (Ex. B, *Allergan, Inc.*, Dkt. 288 at 2). Those considerations are far more likely than those proposed by P&S.

## IV.   CONCLUSION

Because of the prejudice caused to Lutron if this case is further stayed, and because the likelihood of simplification of the issues is speculative and minimal considering the previous reexamination and that the PTO has already considered the relevant prior art, defendant's motion should be denied.

DATED:  March 5, 2012                                    Respectfully submitted,

By: */s/ Nick Saros*
Rick Richmond
Nick G. Saros
JENNER & BLOCK

*Attorneys for Plaintiff and Counter-defendant Lutron Electronics Co., Inc.*

LUTRON'S MEMORANDUM IN OPPOSITON TO DEFENDANT'S MOTION TO EXTEND STAY